DISTRICT OF COLUMBIA, et al., Appellants,

v.

Adrian **CHINN**, Appellee.

No. 01–CV–1154.

District of Columbia Court of Appeals.

Argued Feb. 12, 2003.

Decided Dec. 31, 2003.

---

Donna M. Murasky, Senior Litigation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel at the time, were on the brief, for appellants.

William Payne for appellee.

Before TERRY, STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Alleging that District of Columbia police officers used excessive force against him in effecting an arrest, Adrian Chinn sued for civil rights violations, assault and battery, negligence, and related torts. The jury found in his favor only on the negligence count. On appeal, the District argues that the trial court erred by instructing the jury on negligence when the only basis for such a claim was the use of excessive force, involving an intentional battery. We hold that since Chinn did not present evidence of a specific and distinct claim of negligence, the trial court erred in instructing the jury on negligence in addition to the instruction on assault and battery. However, considering the presence in our case law of language which could understandably have led Chinn to seek inclusion of a

negligence count and the trial court to have given the instruction and the possibility of jury confusion that may have resulted therefrom, we vacate the negligence verdict and remand for a new trial on the assault and battery count alone.

## I.

A vehicle driven by Chinn was pulled over by District police officers early in the morning of April 17, 1998. An altercation ensued between Chinn and five officers. At trial, Chinn testified that he refused to exit the car and was pulled out by officers who then repeatedly beat him with a blunt object about the back, head, and face for half an hour. Chinn's father, who witnessed the incident, testified that Chinn ran from the police, but confirmed the testimony about the beating.

The police officers testified Chinn was pulled over for speeding, having illegally tinted windows, and because they suspected the vehicle was stolen based on a broken window and what turned out to be an erroneous vehicle tag check. The officers testified that Chinn refused to exit the car and was extremely combative, which led to his eventual arrest. Chinn had to be subdued with force, but the police testified that they never used a weapon.

On April 16, 1999, Chinn filed a complaint against four of the officers involved in the altercation and the District of Columbia (collectively "the District"). Following the presentation of evidence, Chinn asked the trial court to instruct the jury on the intentional tort claims (assault, battery, false arrest, intentional infliction of emotional distress, unreasonable seizure, and arrest without probable cause), civil rights violations, and negligence. The

negligence claim was based on a violation of the standard of care set out in D.C.Code § 4–176 (1994) (now codified as § 5–123.02 (2001)), which reads: "Any officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor." Over the District's objection, the trial court gave a negligence instruction, noting there "is a theory that even if one believes that the officers' actions were intentional that they could have mistakenly believed that they needed to exert the amount of force that they did and that could be negligence." In its instruction the court explained that a violation of § 4–176 constitutes evidence of negligence, but did not necessarily confine negligence to that possibility.[1] The jury found for the defendants on all claims except the negligence claim. On that claim, the jury found that two of the officers, Hubbard and Durand, had been negligent and awarded $40,000 in compensatory damages.

## II.

### A.

An individual who has been injured by a District police officer may sue under one or more common law theories of legal liability such as assault and battery or negligence, as Chinn did in the instant case. *See, e.g., Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C.1997). In the case of assault and battery, a plaintiff can recover for assault by proving "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff," and for battery by proving an "intentional act that causes harmful or offensive bodily contact." *Id.* Usually

---

1. The trial court's instruction on the issue of negligence included a standard definition of the concept. *See* Standard Civil Jury Instructions of the District of Columbia Nos. 5.02 and 5.03 (2002).

these technical requirements of assault and battery are satisfied, such as here where there is no question that a battery occurred,[2] and the outcome of the case turns on the defense of privilege:

> A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not "in excess of those which the actor reasonably believes to be necessary."

*Id.* (quoting *Etheredge v. District of Columbia,* 635 A.2d 908, 916 (D.C.1993)). "The reasonableness of a particular act of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20–20 vision of hindsight." *Etheredge* at 916 (quoting *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).[3] Under the rule of the RESTATEMENT (SECOND) OF TORTS § 133 (1965), liability is imposed only for the harm done by the use of such force as was excessive, unless the harm cannot be differentiated.

■ "In order to prevail in a negligence action, the plaintiff must prove the 'applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury.' " *Holder* at 741 (quoting *Etheredge* at 917). Moreover, the District is vicariously liable, under the doctrine of *respondeat superior,* for negligence by its officers who are acting within the scope of their employment. *Id.*

This case is hardly the first time that this court has encountered confusion regarding negligence and battery claims in alleged police brutality suits.

Although we have at times remarked on the similarities and differences of these causes of action [battery and negligence], we have never precisely delineated them from one another.... That we have previously remarked upon the similarities of these causes of action is unsurprising because they all fundamentally involve an inquiry into the reasonableness of the police officer's actions.

*Holder* at 742. Decisions such as *Holder* have thus recognized "the perhaps somewhat confused and overlapping legal principles relating to police use of force." *Id.*

■ Battery is an intentional tort. "Intent and negligence are regarded as mutually exclusive grounds for liability. As the saying goes, there is no such thing as a negligent battery." 1 DOBBS, LAW OF TORTS § 26 at 51 (2001). Strictly speaking, a police officer effecting an arrest commits a battery. If the officer does not use force beyond that which the officer reasonably believes is necessary, given the conditions apparent to the officer at the time of the arrest, he is clothed with privilege. Otherwise, he has no defense to the battery, at least insofar as it involves the use of excessive force.

■ As we noted in *Holder,* "where there is sufficient evidence to submit to a jury the question of assault and battery [that is, where a reasonable jury could conclude that excessive force was used] there *may* be, on the facts of a particular

---

**2.** We shall hereafter refer at times to the count as simply a battery count, since the two torts are conceptually distinct. An arrest situation necessarily involves a battery in the sense of an unwanted seizure or application of force.

**3.** We specifically left open the question of who bears the burden on the privilege issue in *District of Columbia v. Jackson,* 810 A.2d 388, 395 n. 15 (D.C.2002). Where an arrest is lawful and the only issue is the use of excessive force, many states have placed that burden on the plaintiff. 1 DOBBS, LAW OF TORTS § 87 (2001).

case, sufficient evidence to submit the question of negligence as well." 700 A.2d at 742 (emphasis added). Both issues "involve an inquiry into the reasonableness of the police officer's actions. For assault and battery the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer." *Id.*

▮▮▮ Both inquiries, however, are identical when a battery, lawful in its inception, escalates into alleged excessive force. While it may be, as the trial court here noted, that the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force. An unwanted touching may in its inception be intentional, a battery, or accidental, possibly negligent. But once it is found to be intentional, a battery tortfeasor is liable for the full range of consequences, intended or not, including harm and transferred liability. DOBBS, *supra*, §§ 28, 40. Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege having ended at the point where excessive force began. To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion. It also raises the risk that even where no excessive force is used, the jury will conclude that some undefined negligence was present for which relief of some sort is justified. A battery was committed and the officer is liable unless and only to the extent that the officer is clothed by the privilege.

▮▮▮ As already mentioned, however, in certain circumstances the events surrounding the application of excessive force may lend themselves to a theory of negligence as well. What is required to justify such an instruction is at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest, which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery and the defense of privilege.

## B.

▮▮▮ The District suggests that we have two distinct lines of cases dealing with excessive force claims that, at best, "uneasily co-exist": one line that is said to hold that courts may not permit both negligence and intentional tort claims where the sum and substance of the claims is that the defendant committed an intentional tort; and another line that is said to hold that an intentional tort claim may be brought along with a negligence claim even where there is no dispute that a defendant deliberately acted. We disagree with this characterization of our case law and believe that our cases may be read to incorporate the uniform principle set forth above that both negligence and battery claims, in order to go to the jury, must be separate and distinct from each other, even though related, and each of the two counts must be supported by the necessary evidence. *See District of Columbia v. Tinker,* 691 A.2d 57, 63 (D.C.1997) (discussing *Etheredge v. District of Columbia,* 635 A.2d 908 (D.C.1993)).

In the category of cases that supposedly prohibit sending both assault and battery and negligence claims to the jury, the District cites and principally relies on *Maddox v. Bano,* 422 A.2d 763 (D.C.1980), and *Sabir v. District of Columbia,* 755 A.2d 449

(D.C.2000). In *Maddox*, we established that a trial court is not bound by a plaintiff's characterization of an action and the court must look to whether both intentional and negligence claims are specifically pled. The complaint must specify a negligent act and characterize a breach of duty which might have given rise to liability. We noted that use of the terms "carelessly and negligently," without more, are conclusory and do not raise a cognizable claim of negligence. Maddox's complaint described injuries received "as a consequence of excessive force alleged to have been exercised by the arresting officers." There was no dispute that the physical contact was intentional. His complaint thus failed to specify the necessary elements to proceed with a negligence action. Since the statute of limitations had run on the intentional tort, summary judgment was properly granted. *Maddox* at 764–65.

*Sabir, supra,* involved a suit for injuries received when the plaintiff was arrested by officers; she alleged claims under 42 U.S.C. § 1983 and for negligence by the officers in her seizure, arrest, custody, and transportation. Her complaint stated that the officers, "negligently caused the assault and battery, arrest and detention of plaintiffs." *Sabir* at 452. The trial court granted a directed verdict, concluding that "the negligent assaulting of someone based strictly on a negligence theory" did not constitute a valid cause of action. *Id.* We affirmed, reiterating that one incident may give rise to both negligence and intentional tort claims but that plaintiffs must set forth theories meeting the individual requirements of each claim. 755 A.2d at 452. *Sabir* "combined these two theories into a single cause of action, in essence pleading a nonexistent cause of action," i.e., it is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible. *Id.* (quoting 1 F. HARPER & F. JAMES, THE LAW OF TORTS, § 3.52 at 3:19 (3d ed.1996)). "In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here assault, in the 'garments' of another, here negligence." 755 A.2d at 452.[4]

In the second line of cases, appellee, as did the trial court, relies principally upon *District of Columbia v. White,* 442 A.2d 159 (D.C.1982). There, we addressed an award of damages to survivors in a wrongful death action based on the shooting by a police detective of what turned out to be an unarmed man. The plaintiffs had filed an action against the government alleging assault and battery, negligent use of excessive force, and negligent training of the detective; a jury found the government liable for negligence (without specifying the type of negligence) but not for assault and battery. This court decided that the issue of negligent training should not have been submitted to the jury, requiring a new trial, but that the other claims were permissible. *Id.* at 162–63. Basically there were two scenarios for the shooting, one where the decedent was standing with empty hands having stopped fleeing, and the other where the officer shot in self-defense as the decedent turned toward him with what was thought erroneously to be a

---

4. Similarly, in *District of Columbia v. Tinker,* 691 A.2d 57 (D.C.1997), we examined claims for both negligence and assault and battery arising out of a plaintiff's altercation with a police officer, who allegedly knocked him down, hit him with a nightstick, pulled him to his feet, searched him, found a four-inch knife, again shoved him to the ground, handcuffed him, and again pulled him to his feet, in the course of all of which the plaintiff suffered serious injury to his shoulder and wrist. We found that the plaintiff only pled and provided evidence of the intentional tort claims and that no distinct claim for negligence existed.

gun. In upholding the separateness of the negligence claim, we noted the admission into evidence of a police regulation on an officer's safe use of firearms,[5] which established that a duty was owed to the decedent, a breach of which would constitute evidence of negligence. Perhaps somewhat confusingly, we also noted the existence of D.C.Code § 4–176 as constituting "further evidence of negligence." See discussion *infra.*

The *White* court noted that it was not bound by plaintiff's claims of negligence and instead should "examine the elements of the alleged offense to determine which causes of action the complaint actually states." *Id.* at 162. Citing *Maddox, supra,* the court noted that the complaint must specifically allege negligence and not merely conclusory allegations. However, *White* found that *District of Columbia v. Downs,* 357 A.2d 857 (D.C.1976), was controlling for the proposition that "a jury could properly find negligence in the shooting death of a decedent even though it did not find assault."[6] The court noted that *White* and *Downs* were factually different from *Maddox,* where the negligence allegations were dismissed due to their conclusory nature. *White* at 164 n. 13.

Subsequently, in *Etheredge v. District of Columbia,* 635 A.2d 908 (D.C.1993), this court held that a plaintiff, who had been shot in the back by a police officer who had responded to a call of domestic violence, had presented sufficient evidence to go to a jury on counts of both negligence and assault and battery. Here too there were two scenarios. The first was that the victim had been shot while standing motionless and unarmed on a staircase with his arms at his side. The second was that the victim had been told to freeze, disobeyed the order, and whirled around with what appeared to be a handgun, and the officer shot in self-defense. Again, the police regulation on the use of firearms was introduced into evidence and both sides presented expert testimony on the subject. While it is true that both claims involved the same act, that of shooting the victim, that act came at the inception of the battery and was itself the totality of the "excessive" force. It is also worth noting, although we found it unnecessary to rely on this aspect, that the evidence also included claims of a number of departures from the standard of care in the time leading up to the entry into the victim's home that could have obviated the need to use deadly force. In sum, "[w]e held that the evidence was sufficient to go to the jury on both counts, but we made clear that the two claims were separate and distinct, even though 'related,' and that the two counts were supported by different evidence." *Tinker, supra,* at 63 n. 5 (discussing *Etheredge* ).

5. The regulation read:

   (a) It is the policy of the Metropolitan Police Department that each member of the department shall in all cases use only the minimum amount of force which is consistent with the accomplishment of his mission, and shall exhaust every other reasonable means of apprehension or defense before resorting to the use of firearms.

   (b) No member of the Metropolitan Police Force shall discharge a firearm in the performance of police duties except …

   (1) To defend himself or another from an attack which the officer has reasonable cause to believe could result in death or serious bodily injury.

District of Columbia Regulation Number 72–2 (January 14, 1972).

6. *Downs* also involved two scenarios, one with the officers acting in self-defense after being charged by the victim and the other with the officers shooting the victim as he hid in a closet. The same police firearms regulation was introduced into evidence. No mention was made of D.C.Code § 4–176.

This court also considered this issue in *District of Columbia v. Evans,* 644 A.2d 1008 (D.C.1994). In that case, police were called to the scene where the decedent was reported to be having a seizure. The police claimed the decedent was under the influence of drugs, had a knife, came at them, and was shot and killed in self-defense, whereas Evans claimed that the officers, despite being told the decedent was an epileptic, shot him while he was standing in an alley with nothing in his hands. The decedent's mother sued on several grounds including 42 U.S. § 1983 (unreasonable seizure), assault and battery, and various negligence claims. The trial court ruled that this was an effort to convert an intentional tort into a negligence claim and granted the defendants' motion for directed verdict as to the negligence claims. *Id.* at 1020. The jury found for the defendants on the assault and battery claim. On appeal, we concluded:

> [A]lthough the jury verdict on the assault and battery claims indicates that the officers did not act deliberately when they shot Virtus Evans, this does not preclude plaintiff from claiming that the officers were negligent in shooting Evans. Nor does it preclude litigation of plaintiff's theory that the officers' conduct was negligent during the period of time leading up to the shooting.

*Id.* at 1019–20. Relying on *Downs* and *White, supra,* we stated that a separate negligence action had been alleged. The court pointed in particular to the same departmental regulation concerning the use of firearms and to expert testimony concerning its violation.[7]

Looking to the totality of this case law, we think it can reasonably be said that this court has adopted a consistent approach in assessing actions for both negligence and assault and battery arising out of similar incidents. "[W]here there is sufficient evidence to submit to a jury the question of assault and battery, there may be, on the facts of a particular case, sufficient evidence to submit the question of negligence as well." *Holder, supra,* at 742. In reviewing claims, neither the trial court nor the appellate court is bound by a plaintiff's characterization of the action as alleging negligence and/or assault and battery. *Tinker, supra* at 63; *White, supra* at 162; *Maddox, supra,* at 765. Therefore, the court must look to the particular facts and circumstances of the case to properly characterize the action. There are cases where the plaintiff does not allege or prove a distinct negligence ground. *Maddox, Sabir, Tinker, supra.* Such claims will fail because the plaintiff does not articulate elements of a negligent action and may not bootstrap from the battery proof alone, as one may not commit a negligent assault. *Sabir, supra* at 452 (quoting 1 F. HARPER & F. JAMES, THE LAW OF TORTS, § 3.52 at 3:19 (3d ed.1996)).

However, the *Maddox* and *Sabir* line of cases, as evidenced by their language, do not preclude separate causes of action where the plaintiff has pled and established separate and distinct claims. Each of the cited cases in the *White* line that have upheld submitting both negligence and battery counts to a jury have common characteristics. Each involves the use of deadly force. Each invokes a police regulation establishing a standard of care with

---

**7.** Two more recent cases also involved shootings by police officers where both battery and negligence claims were submitted to the jury. In neither case, however, did the court have to face the precise issue we deal with here. In *Holder, supra,* the "unique instructions" determined that the jury verdict on negligence also controlled the battery count. In *District of Columbia v. Jackson,* 810 A.2d 388 (D.C. 2002), the court took note of the issue now before us but observed that it had not been raised at any point in that litigation.

respect thereto that is arguably distinct from the excessive force standard. Each involves alternate scenarios in at least one of which a distinct act of negligence, a misperception of fact, may have played a part in the decision to fire. Each involves a negligent act that precedes the application of the relevant force of resort to firearms, i.e., prior to the pulling of the trigger.

## C.

■ None of these features that appear in the *White* line of cases is present in the case before us. To the contrary, the allegations made and the evidence presented here are most similar to our cases where the plaintiff failed to make a separate and distinct claim for negligence apart from the battery allegations. Chinn's complaint alleged that the defendants committed negligence by violating D.C.Code § 4–176 in using "unnecessary and wanton severity while arresting Plaintiff" and they "breached their duty as they were negligent in their excessive use of force" and "knowingly and maliciously acted in manner that would cause injury to Plaintiff's person." These allegations, like those in *Maddox, Sabir*, and *Tinker*, neither establish a claim separate and distinct from the alleged battery, nor demonstrate the essential elements of a negligence claim. The allegations do not reflect negligence, but rather an intentional tort with a conclusory allegation of negligence. *See Sabir, supra* at 452.

The crux of Chinn's claim is that the officers deliberately inflicted excessive force upon him, and the evidence he presented at trial was that officers continuously assaulted him without provocation. Chinn did not argue that the officers mistakenly or negligently thought Chinn was armed; Chinn did not allege that the officers misperceived him as a threat. The negligence claim, under these circumstances, should not have gone to the jury as no separate and distinct cause or theory of negligence was presented before the court.[8]

■ Otherwise put, if, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care. It is tautological to speak of the applicable standard of care as being the duty not to use excessive force; that is the precise boundary line of the privilege itself, and it matters not whether it is exceeded because of the deliberate intention of the officer or through a mistake as to the limit of objectively reasonable allowable force. Liability is imposed by the very nature of the limitation of the privilege itself. So here, where the battery began with the clear intent of the officers to initiate a seizure, the battery did not transmogrify into negligence by the fact that the officers may have in the process mistakenly crossed the line of permissible force. Any "negligence" was inherent in the battery itself, which remained a battery but now unprivileged.[9]

8. Chinn suggests that negligence may have been involved in the erroneous vehicle tag check, but such negligence would be unrelated to the excessive use of force. The jury found in the District's favor on the false arrest count.

9. Because the negligence claim was not properly before the jury at all, we need not address appellant's second contention that Chinn's negligence claim should not have gone to the jury in any event because he failed to adduce expert evidence to establish the negligence by the officers.

### D.

It is true that in perhaps somewhat unguarded language, we have suggested that a negligence action can be based on the provision of D.C.Code § 4–176 (1994), now § 5–123.02 (2001), that provides: "Any officer using unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery and, upon conviction, punished therefor." *See, e.g., Holder, supra,* 700 A.2d at 741 (citing *White, supra* ). The problem is that if "unnecessary severity" is equated with "excessive force," the provision adds nothing to liability already existing under the privilege doctrine. Indeed, the standard is far higher than that of the limit of the privilege, in that the statute requires "wanton" severity. Using the statute, standing alone, as a basis for an alternative negligence count in a setting of a plain battery situation can only lead to obfuscation and confusion. No rational jury could find no battery by a police officer (that is, no use of excessive force) and yet find "negligence" on the basis of the statute alone. The *White* case, the seminal case discussing the use of this statute as prescribing a negligence standard of care, itself relied in the first instance on a distinct standard found in the police department's own regulation dealing with the use of firearms and the application of deadly force. No case to our knowledge has relied upon the statutory provision standing alone.

This consideration, however, does bear directly on the appropriate remedy in this case. As already indicated, Chinn and ultimately the trial court relied upon § 4–176 as setting a standard of care permitting the submission of a negligence count to the jury, and statements in our prior cases provided some support for such reliance. In the absence of any independent grounds for finding negligence, the jury may have speculated that if it determined that the officers acted in the mistaken belief that the amount of force they were using was reasonable, the proper verdict was to hold in favor of negligence rather than battery. But we cannot know this, and other misconceptions that would undercut application of the privilege may have flowed from the inclusion of negligence considerations, especially since the instruction did not expressly confine the jury to the statute in determining negligence. It could, of course, be argued that having pushed for the giving of an erroneous negligence instruction, appellee made his bed and now must lie in it. However, given all the circumstances, we think that "counsel should not be faulted too heavily for failing to anticipate our analysis." *Etheredge,* 635 A.2d at 921. Accordingly, we vacate the judgment appealed from and remand the case for a new trial on the assault and battery count alone.[10]

*So ordered.*

---

10. We are mindful that Chinn did not file a protective cross-appeal and we recognize the well-settled rule of practice that on an adversary's appeal, a party may not challenge or seek to enlarge a judgment without a timely cross-appeal. *See Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 431 (D.C.1996). However, "[b]ecause this rule of practice is not a rule of jurisdiction...it 'may be dispensed with under appropriate circumstances.' " *Id.* at 431 (quoting *Edwards v. Woods,* 385 A.2d 780, 783 (D.C.1978) and citing other authorities, including *Langnes v. Green,* 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). In *Edwards,* we indicated that while the rule

"should not be discarded lightly," deviation could be warranted "to the extent necessitated by justice and the circumstances of [the particular] case." 385 A.2d at 783. In this case, the District itself conceded the potentially conflicting state of our law in this area and the resulting potential for jury confusion and inconsistent verdicts in petitioning unsuccessfully for an *ab initio* hearing *en banc*. Given these considerations and those set forth in the text, we are satisfied that we are presented here with truly exceptional circumstances that justify the disposition we set forth.