MADSEN, J. (dissenting)
¶25 A Tacoma police officer stopped her patrol car and approached a man at the northwest corner of East 28th Street and *616 Portland Avenue, a location for which police had received complaints about aggressive panhandlers. The encounter quickly escalated until the officer drew her firearm and shot the man. The majority holds that these facts support a claim of negligence, but there is no doubt that the officer acted intentionally when she shot this man and that it was the officer's action of shooting the man that caused the injury for which he now seeks compensation. The majority divorces the first portion of the encounter from the injury and says that the escalation is the injury. But it is not. The man is seeking redress for being shot; he does not identify any independent injury related to the escalating conduct. Rather, the events leading up to the shooting are relevant to support the plaintiffs' claim for assault and battery. For these reasons, as expounded below, I dissent.
¶26 This case concerns claims against the city of Tacoma stemming from a police shooting of Cesar Beltran-Serrano, a Spanish-speaking, mentally ill man, on a Tacoma street following a community caretaking contact with Beltran-Serrano by Tacoma Police Officer Michel Volk. The present review addresses the trial court's dismissal on partial summary judgment of a negligence claim against the city stemming from the noted shooting; at issue is whether Beltran-Serrano's negligence claim may be maintained in light of Officer Volk's intentional shooting of Beltran-Serrano.
¶27 As noted, the majority answers that question affirmatively by "focus[ing] on Officer Volk's negligence leading up to the shooting" (majority at 611) and reverses the trial court's grant of summary dismissal of the negligence claim. In the majority's view, "[t]he gravamen of the negligence claim is the mishandling of the encounter, not the use of excessive force." Id. at 612 n.6. I disagree. In my view, we cannot so easily parse and ignore the required elements of a negligence claim. In the present circumstance, where intentional injury is the basis of the complaint, a claim of negligence is not available as a matter of law. I begin with the required elements of a negligence claim.
¶28 To sustain an actionable negligence claim, a plaintiff must establish four essential elements: duty, breach, proximate cause, and resulting harm. Pedroza v. Bryant , 101 Wash.2d 226, 228, 677 P.2d 166 (1984) ; Hansen v. Friend , 118 Wash.2d 476, 479, 824 P.2d 483 (1992) ; Kennedy v. Sea-Land Serv., Inc., 62 Wash. App. 839, 856, 816 P.2d 75 (1991). "If any of these elements cannot be met as a matter of law, summary judgment for the defendant is proper." Ranger Ins. Co. v. Pierce County , 164 Wash.2d 545, 552-53, 192 P.3d 886 (2008). "A defendant as moving party may prevail by showing that there is an absence of evidence to support the plaintiff's case." Kennedy , 62 Wash. App. at 856, 816 P.2d 75 (citing Young v. Key Pharm., Inc., 112 Wash.2d 216, 225 n.1, 770 P.2d 182 (1989) ).
¶29 Critically, the damage or harm must be the proximate result of the breach of duty; merely following subsequently in time is not enough. "Negligence and causation are independent legal requirements, and a finding of negligence does not automatically imply causation." 65 C.J.S. Negligence § 15 at 301 (2010). Further, "[d]amages constitute an essential element of a negligence claim; without damages, a negligence claim fails. Proof of damages, that is, actual injury to the plaintiff, is an essential element of a claim for negligence." Id. § 54, at 351 (footnote omitted). "An allegedly negligent act must cause an injury in order to be actionable. A plaintiff in a negligence action therefore is required to adduce evidence showing there was a negligent act on the part of the defendant and that such act was the cause of the plaintiff's injury ." Id. at 351-52 (emphasis added) (footnote omitted).
If the negligent act or omission has resulted in no injury or loss to anyone, it is merely injuria sine damno even though it involved a violation of a statute or ordinance. Even though injury may have resulted, there is no liability unless such injury was proximately caused by the negligence complained of; the real cause of action in a negligence case is not the negligent act but the injury resulting therefrom, since to support the action there must be not only the negligent act but a consequential injury, and the injury is the gravamen of the charge.
*617 Id. at 352 (emphasis added) (footnotes omitted).
¶30 Put another way, even if the conduct preceding the injury is substandard, such fact cannot "fill in" for the absence of a proximately caused resulting injury. "An action in negligence is not determined alone from the doing of an act resulting in injury to another. Similarly, a defendant's breach of a duty, standing alone, does not mean that a defendant is negligent." Id. § 20, at 305 (footnote omitted). "The essence of negligence is behavior creating an unreasonable danger to others"-it is "relative to the time, place, circumstances, or persons involved"; accordingly, "[n]egligence in the abstract does not support a cause of action." Id. § 4, at 280. "To maintain an action in negligence, the plaintiff must assert in the complaint [the noted four elements]. When these elements are present, they together constitute negligence, and the absence of any one of these elements renders the complaint bad or the evidence insufficient." Id. § 20, at 305-06 (footnote omitted).
A negligent or careless act is not necessarily actionable negligence. To constitute actionable negligence, there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. Even though an act or omission may involve a lack of care, it does not necessarily follow that any cause of action arises therefrom since negligence which did not contribute to the damage sustained is negligence, but not actionable negligence, and negligence is not a tort unless it results in the commission of a wrong or in harm to someone.
Id. § 11, at 292 (footnotes omitted).
¶31 Further, the injury must be cognizable in the negligence context. "The term 'negligence' is synonymous with disregard, heedlessness, inadvertence, inattention oversight and thoughtlessness." Id. § 15, at 299-300 (footnotes and most internal quotation marks omitted). "The words 'negligence' and 'intentional' are contradictory; negligence is not synonymous with intentional action." Id. § 17, at 302 (footnote omitted); see also Tegman v. Accident & Med. Investigations, Inc., 150 Wash.2d 102, 109-10, 75 P.3d 497 (2003) ("fault" within the meaning of chapter 4.22 RCW, which encompasses liability for negligence, does not include intentional acts or omissions); State Farm Fire & Cas. Co. v. Justus , 199 Wash. App. 435, 455, 398 P.3d 1258, review denied , 189 Wash.2d 1026, 406 P.3d 629 (2017) (distinguishing "intentional acts to harm" as "not merely conduct which created an 'unreasonable risk of harm' ").
"Negligence," by definition, is not an intentional tort: it includes only such conduct as creates liability for the reason that it involves risk and not certainty of invading the interest of another, and therefor excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured.
65 C.J.S. Negligence § 17, at 302 n.1.
[N]egligence excludes the idea of intentional wrong; the absence of an intent or purpose to inflict the injury of which complaint is made is essential to the legal conception of negligence and is an element which distinguishes it from other torts. Where an intention to inflict the injury exists , whether that intention is actual or constructive only, the wrongful act is not negligent but is one of violence or aggression.
Id. § 28, at 313 (emphasis added) (footnotes omitted). Accordingly, "[n]egligence claims and assault and battery claims ... are mutually exclusive." Id. § 15, at 300.
¶32 With these requirements in mind, turning to the current case, the majority's focus on Officer Volk's alleged substandard conduct concerning her initial contact with Beltran-Serrano does not cure the absence of a qualifying proximately caused injury. That is, while Beltran-Serrano was indeed injured, there is no dispute that the shooting of Beltran-Serrano by Officer Volk was an intentional act. The shooting is the only harm alleged by Beltran-Serrano in his complaint and is pleaded as the basis for both his assault and battery claim and his negligence claim. The amended complaint states, "Defendant [city] ... unreasonably, unnecessarily, and without provocation shot Cesar Beltran ... thereby inflicting an assault and *618 battery on Cesar Beltran." Clerk's Papers at 78. The amended complaint further states, "As a direct and proximate result of the breaches, failures, and negligence of Defendant [city], ... Plaintiff was shot ... multiple times causing serious injuries." Id. Only a single harm is alleged-the shooting. There is no dispute that the shooting was intentional. Officer Volk deliberately drew her service handgun and shot Beltran-Serrano multiple times.[1] There is simply no inadvertence that would support a negligence claim. See 65 C.J.S. Negligence § 14, at 298 ("A negligent act is an inadvertent act."); see also Boyles v. City of Kennewick, 62 Wash. App. 174, 176, 813 P.2d 178 (1991) ("[A] police officer making an arrest is justified in using sufficient force to subdue a prisoner, however [the officer] becomes a tortfeasor and is liable as such for assault and battery if unnecessary violence or excessive force is used in accomplishing the arrest." (citing 6A C.J.S. Assault & Battery § 27 (1975) )). A complaint that refers only to intentional, deliberate conduct does not state a prima facie claim of negligence. "To state a claim for negligence, the underlying complaint must allege facts that support a conclusion that the conduct was negligent." Grange Ins. Ass 'n v. Roberts , 179 Wash. App. 739, 769, 320 P.3d 77 (2013). " 'In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the harm.' " Id. (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wash.2d 316, 319, 255 P.2d 360 (1953) ).
¶33 The majority cites District of Columbia v. Chinn , 839 A.2d 701 (D.C. 2003), and Hayes v. County of San Diego, 57 Cal. 4th 622, 305 P.3d 252, 160 Cal. Rptr. 3d 684 (2013), as support, but in my view, Chinn argues against the availability of a negligence claim here and Hayes simply does not convince. In Chinn , "the plaintiff failed to make a separate and distinct claim for negligence apart from the battery allegations." 839 A.2d at 711. Chinn's allegations "neither establish[ed] a claim separate and distinct from the alleged battery, nor demonstrate[d] the essential elements of a negligence claim. The allegations [did] not reflect negligence, but rather an intentional tort with a conclusory allegation of negligence." Id. The same is true here. The Chinn court explained,
The crux of Chinn's claim is that the officers deliberately inflicted excessive force upon him, and ... assaulted him without provocation. Chinn did not argue that the officers mistakenly or negligently thought Chinn was armed; Chinn did not allege that the officers misperceived him as a threat. The negligence claim ... should not have gone to the jury as no separate and distinct cause or theory of negligence was presented before the court.
Id. Chinn does not support the notion that a negligence claim can be premised upon an intentional tort as the majority advocates here.
¶34 In Hayes , the California Supreme Court, answering a certified question from the Ninth Circuit Court of Appeals, noted that under California state law, the court had "long recognized that peace officers have a duty to act reasonably when using deadly force." 57 Cal. 4th at 629, 305 P.3d 252, 160 Cal.Rptr.3d 684. The California court explained that in its prior decision in Grudt v. City of Los Angeles, 2 Cal. 3d 575, 468 P.2d 825, 86 Cal. Rptr. 465 (1970), it had determined that preshooting circumstances might show that an otherwise reasonable use of deadly force by officers was, in fact, unreasonable. But the circumstances in Grudt and Hayes are nothing like the case here. In Grudt , a police officer in plain clothes, carrying a double-barreled shotgun, approached a car, possibly causing the driver to think he was being robbed or attacked. The driver accelerated the car toward a second plainclothes officer, and then both officers opened fire on the driver, killing him. See Hayes , 57 Cal. 4th at 629, 305 P.3d 252, 160 Cal.Rptr.3d 684 (discussing Grudt ). In Hayes , police officers were called to a house and advised that the man inside was potentially suicidal. When the officers entered the house to investigate, the man approached them, holding a knife in his raised hand. Both officers drew their *619 firearms and fired two shots, killing the man. Id. at 626, 160 Cal. Rptr. 3d 684, 305 P.3d 252.
¶35 In my view, Hayes does not offer any useful guidance here. It is based on foreign jurisdiction law, and the circumstances in both Hayes and Grudt are simply too different from the present case to be helpful.[2] More to the point, for the reasons discussed above, I disagree with Hayes. While an officer's use of deadly force must be appropriate, "[w]here an intention to inflict the injury exists, whether that intention is actual or constructive only, the wrongful act is not negligent." 65 C.J.S. Negligence § 28, at 313. As discussed above, a plaintiff "may not base claims of negligence on alleged intentional actions, such as excessive force or unlawful arrest." Lawson v. City of Seattle , No. C12-1994-MAT, 2014 WL 1593350, at *13 (W.D. Wash. Apr. 21, 2014) (court order); see also St. Michelle v. Robinson , 52 Wn. App. 309, 315-16, 759 P.2d 467 (1988) (where alleged sexual abuse was intentional, and the resulting emotional distress was also intentionally inflicted as a matter of law, plaintiff cannot state a cause of action for negligent infliction of emotional distress); Willard v. City of Everett, No. Cl 2-14 TSZ, 2013 WL 4759064, at *2 (W.D. Wash. Sept. 4, 2013) (court order), aff'd , 637 F. App'x 441 (2016) ("A plaintiff may not base a claim of negligence on an intentional act, like the use of excessive force."); Keates v. City of Vancouver, 73 Wash. App. 257, 267, 869 P.2d 88 (1994) ("As a general rule, law enforcement activities are not reachable in negligence.").
¶36 Finally, I note that affirming the trial court's dismissal of the negligence claim does not leave Beltran-Serrano without a remedy concerning the shooting. As Boyles noted, where a police officer is alleged to have used excessive force in accomplishing an arrest, a claim for assault and battery may lie, and Beltran-Serrano has so alleged. See Boyles, 62 Wash. App. at 176, 813 P.2d 178. However, for the reasons discussed, in my view, a negligence claim based on the intentional shooting that occurred here is simply not available. I would affirm the trial court's dismissal of Beltran-Serrano's negligence claim. Accordingly, I dissent.
Johnson, J.
Owens, J.
WIGGINS, J, (concurring in dissent)
¶37 I concur in Justice Madsen's dissent that a negligence claim based on the intentional act of shooting a weapon is not available. Dissent at 9. I write separately to emphasize the important distinction in mental states between negligence and intentional tort claims.
¶38 As we have repeatedly held, a cause of action in negligence requires a plaintiff to show that a defendant owed a duty of care to the plaintiff, there was a breach of that duty, there was a resulting injury, and there was proximate cause between the breach and the injury. Hutchins v. 1001 Fourth Ave. Assocs., 116 Wash.2d 217, 220, 802 P.2d 1360 (1991). An intentional tort requires, among other things, proof of intent. For example, an "intentional tort" is "[a] tort committed by someone acting with general or specific intent." BLACK'S LAW DICTIONARY 1717 (10th ed. 2014).
¶39 The mental states of intentional torts and negligence are vastly different and exist on a sliding scale:
If the actor knows that the consequences are certain, or substantially certain, to result from his [or her] act, and still goes ahead, [the actor] is treated by the law as if he [or she] had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence.
RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (AM. LAW INST. 1965) (RESTATEMENT) . Negligence *620 conveys the idea of neglect or inadvertence, "as distinguished from premeditation or formed intention." Adkisson v. City of Seattle, 42 Wash.2d 676, 682, 258 P.2d 461 (1953).
¶40 Thus, an actor cannot be of two minds. He or she may act either negligently, lacking intent to cause harm, or intentionally, intending to cause or aware that harmful consequences are substantially certain to result from an action. RESTATEMENT § 8A. These mental states are mutually exclusive. Id. §§ 8A, 282 cmt. d; DAN B. DOBBS ET AL., THE LAW OF TORTS § 31, at 77 (2d ed. 2011) ("Any given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability.").
¶41 Here, assuming that Cesar Beltran-Serrano could prove the first three elements in negligence, he cannot prove that the proximate cause of his injuries resulted from a negligent act. The sole cause of Beltran-Serrano's injury was the shooting of Officer Michel Volk's weapon. The officer's decision to pull the trigger was intentional. This fact cannot be used simultaneously as evidence of intention and negligence, as liability under these theories requires distinct and mutually exclusive mental states. E.g., RESTATEMENT § 8A.
¶42 The majority's decision combines two mutually exclusive principles of tort law and does not answer the inherent conflict it creates in so doing. A claim is one of either negligence or intention-it cannot be both. If a principled path existed to reconciling these conflicting principles, the majority would have offered such a path. It has not, and this silence is telling.
¶43 Accordingly, I respectfully dissent.

Whether that shooting was justified will be determined at trial.

In the present case, Officer Volk was not advised that the man she was approaching was unstable; nor was there any question about Officer Volk's identity since she was driving a marked police cruiser and was in uniform when she approached Beltran-Serrano.