# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **Keith Blakeney,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil No. 1:14-cv-01139 (APM)** |
| **Officer Thomas O'Donnell,** *et al.*, | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Keith Blakeney alleges that, on July 6, 2013, he was assaulted, battered, falsely arrested, and falsely imprisoned by members of the District of Columbia Metropolitan Police Department. He brought suit against the District of Columbia and the individual officers involved—four named and others unnamed—seeking redress for the injuries he sustained. Before the court is the District of Columbia's partial Motion to Dismiss,[1] as well as a Motion to Dismiss filed by the named officers. The District of Columbia has moved to dismiss five claims under Federal Rule of Civil Procedure 12(b)(6): (1) municipal liability under 42 U.S.C. § 1983; (2) civil conspiracy; (3) malicious prosecution; (4) negligence; and (5) negligent training and supervision. The civil conspiracy, malicious prosecution, and negligence claims are brought against the District of Columbia under a theory of *respondeat superior*. The named officers have moved to dismiss all claims for insufficient service of process.

---

[1] The District filed an Answer to Plaintiff's Amended Complaint as to Counts III (assault), IV (battery), VII (false imprisonment and false arrest), and X (intentional infliction of emotional distress). *See* Def. District's Answer to Counts III, IV, VII, and X of Pl.'s Am. Compl., ECF No. 13 [hereinafter District's Answer].

After considering the parties' arguments, the court grants the District's Motion to Dismiss as to Plaintiff's Section 1983, negligence, and negligent training and supervision claims, but denies it as to his claims of civil conspiracy and malicious prosecution. The court denies the named officers' Motion in its entirety.

## II. BACKGROUND

### A. Facts Alleged in the Complaint

Plaintiff's Amended Complaint alleges the following facts. On the evening of July 6, 2013, Plaintiff travelled by foot from his mother's home to his own in Southeast, Washington, D.C. Am. Compl., ECF No. 7 ¶ 10. Across the street from his apartment building, located in the 400 block of Mellon Street, S.E., Plaintiff saw approximately nine to ten Metropolitan Police Department ("MPD") officers ("Defendant Officers"), including the four named officers (the "Named Officers"), and approximately four to five handcuffed individuals. *Id.* ¶¶ 11-12. One of the MPD officers said to Plaintiff, "There he is. What's up Peaches?" *Id.* ¶ 14. Plaintiff ignored the officer and walked towards his apartment building. *Id.* ¶ 15. An officer then said, "You hear us talking to you. What's up Peaches?" *Id.* ¶ 16. Plaintiff replied, "That is not my name," and continued walking towards his building. *Id.* Again an officer said, "What's up with you, Peaches?" *Id.* ¶ 17. Plaintiff responded, "Nothing was up with me. Just minding my business. What's up with ya'll? It's a shame that we can't chill in our own neighborhood in peace without ya'll coming through and harassing us." *Id.* An MPD officer wearing a green shirt and no vest— "Officer 1"—then stated, "What did you say mother*****," prompting Plaintiff to repeat himself. *Id.* ¶ 18.

As Plaintiff walked into his apartment building, "Officer 1 grabbed him by his right arm," "turned him around and said, 'You're going to jail.'" *Id.* ¶¶ 19-20. Officer 1 pulled Plaintiff's

hands together as Plaintiff asked, "Why am I going to jail?" *Id.* ¶ 23. Officer 1 and three to four additional officers then "slammed" Plaintiff to the ground between two parked cars. *Id.* ¶ 24. A white male officer—"Officer 2"—grabbed Plaintiff's dreadlocks and twisted his head while a black male officer—"Officer 3"—"repeatedly struck [him] approximately 10-12 times on the left side of his face just below his left eye," *id.* ¶ 25, as "other officers were kicking and stomping him over his body, including his head," *id.* ¶ 26. Officer 1 then placed Plaintiff in "extremely tight" handcuffs. *Id.* ¶ 27. Plaintiff did not resist arrest. *Id.*

The officers brought Plaintiff before the other handcuffed individuals, "twisted [his] body and again violently slammed him onto the ground on his chest." *Id.* ¶ 29. Officer 2 placed his knee into Plaintiff's back and twisted Plaintiff's head by his dreadlocks. *Id.* Plaintiff repeatedly asked why he was being arrested. *Id.* ¶¶ 30-31. Officers 2 and 3 responded with obscenities. *Id.*

The MPD officers transported Plaintiff to a police station and then to a hospital "where he was treated for right shoulder pain, mouth pain, torso pain, facial abrasions and numbness," and was given a pain relieving medication along with a muscle relaxant. *Id.* ¶¶ 32-33. Thereafter, the officers transported Plaintiff to MPD's Central Cell Block. *Id.* Two days later, on July 8, 2013, Plaintiff appeared "before a judicial officer at D.C. Superior Court," who informed him that he had been charged with "Assault on a Police Officer." *Id.* ¶ 35. Plaintiff alleges that "Defendant Officers conspired to falsely accuse and charge [him] . . . even though they did not have probable cause to prove that [he] had committed any illegal act." *Id.* ¶ 34. Plaintiff further alleges that Defendant Officers "conspired to file false reports and offer false testimony against [him] in order to cover up their use of excessive force and battery of" him. *Id.* ¶ 75. On February 4, 2014, the assault charge against Plaintiff was dismissed. *Id.* ¶ 37.

## III.    LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

IV.    ANALYSIS

    A.    Municipal Liability Under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a remedy for an individual who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law.  42 U.S.C. § 1983.  A municipality, like the District of Columbia (the "District"), may be held liable under Section 1983 for the acts of its employees, but only where "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," can a municipality be liable under Section 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish municipal, or *Monell*, liability under Section 1983, a plaintiff must first demonstrate an underlying constitutional violation, and second, show that the municipality's policy or custom caused the violation.  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).  Here, Plaintiff has sufficiently alleged a constitutional violation: he accuses Defendant Officers—employees of the District—of using excessive force against him in violation of the Fourth Amendment.[2]  *See* Am. Compl. ¶¶ 23-30, 53, 67; *see also Armbruster v. Frost*, 962 F. Supp. 2d 105, 11 (D.D.C. 2013) ("The Fourth Amendment's prohibition on

---

[2] Plaintiff alleged in his Amended Complaint that the District also violated his First and Fifth Amendment rights. *See* Am. Compl. ¶¶ 58-59.  He consented to dismissal of the First Amendment claim by failing to address it in his opposition to the District's Motion.  *See generally* Pl.'s Opp'n to Def. District of Columbia's Partial Mot. to Dismiss Am. Compl., ECF No. 15 [hereinafter Pl.'s Opp'n]; *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citations omitted) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  As to Plaintiff's Fifth Amendment claim, the court need not assess it because Plaintiff has failed to present facts regarding any District policy or custom.  Therefore, even if the court were to find an underlying Fifth Amendment violation, Plaintiff's Section 1983 claim would not survive the District's Motion to Dismiss.

unreasonable searches and seizures encompasses the right to be free from the use of excessive force during an arrest, investigatory stop, or any other seizure.") (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Taking the allegations in Plaintiff's Amended Complaint as true and drawing all inferences in his favor, the court concludes that the force Defendant Officers used against Plaintiff was "excessive under objective standards of reasonableness." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Plaintiff thus has sufficiently alleged a Fourth Amendment violation and has satisfied the first requirement of *Monell*.

Plaintiff has not, however, sufficiently alleged that a District policy or custom caused the violation of his Fourth Amendment rights. A plaintiff can plead municipal liability by alleging facts that, if accepted as true, establish that: (1) the municipality "explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (quoting *Monell*, 436 U.S. at 694) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-30 (1988)); (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* (citing *Praprotnik*, 485 U.S. at 130); or (3) the municipality neglected to respond "to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *id.* (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted).

The only remotely plausible theory of municipal liability advanced in the Amended Complaint is that the District was deliberately indifferent to a known risk of the use of unconstitutional excessive force by MPD officers.[3] Plaintiff asserts, "[o]n information and belief,"

---

[3] Plaintiff's statement that "[t]he battering of the Plaintiff by the Defendant Officers was in direct violation of any and all applicable regulation(s) and/or order(s) and/or standard(s), including but not limited to, General Orders 901.07, 201.26 and 501.07, Special Order 97-31, and the Spectrum of Force and Use of Force Continuum," Am. Compl. ¶ 42, makes clear that he does not contend that the District "explicitly adopted" a policy that caused the constitutional violation at issue. And he does not point to *any* evidence that a District policymaker had knowledge of a consistent practice that led to the constitutional violation, thereby precluding a theory of "knowing" ignorance.

that "there is a custom or practice in the [MPD] of subjecting certain arrestees to more than the minimum force than is necessary to accomplish his or her mission despite clear MPD policy prohibiting such a practice." Am. Compl. ¶ 39. Because of this custom and practice, Plaintiff alleges, the District "is liable for . . . damages under *Monell*." *Id.* ¶ 59. In support of his assertion, Plaintiff offers only a single factual averment: "This custom or practice is evidenced by the actions of the named and unnamed officers in this Complaint of throwing, kicking, punching and stomping [Plaintiff] for no justifiable reason since he had committed no crime." *Id.* ¶ 39. However, "[p]roof of a single incident of unconstitutional activity," which is all Plaintiff offers here, "is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Okla. City v. Tuttle*, 471 U.S. 808, 841 (1985); *see also Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) ("Proof of a single incident of unconstitutional activity is insufficient to impose liability [under Section 1983] unless there was proof that there was a policy in place that was unconstitutional."). Thus, Plaintiff's factual statement about a single incident—his July 6, 2013, encounter with Defendant Officers—is not, standing alone, sufficient to give rise to an plausible inference that a District custom or policy caused a violation of his Fourth Amendment rights.[4]

---

[4] Plaintiff "doubles-down" on his reliance on a single-incident of misconduct in his Opposition Brief, arguing that:

> [t]he joint actions of the police officers in committing these unconstitutional acts indicates that the officers shared assumptions about the kind of conduct that was acceptable within their department, even though there were MPD Orders to the contrary. Where such conduct is well-coordinated and there is no discussion or disagreement regarding its propriety, it also tends to show that the practices are long-standing or have at least been engaged in previously by officers within the department, which is relevant to the existence of both policy and custom.

Pl.'s Opp'n at 6. That a single incident might give rise to *some* inference about policy and custom, however, does not elevate a *Monell* claim "from conceivable to plausible." *Twombly*, 550 U.S. at 570. As the Court observed in *Connick v. Thompson*, 131 S. Ct. 1350, 1360 n.7 (2011), "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates." (quoting *City of Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)).

Unable to predicate *Monell* liability on a single incident, Plaintiff offers another theory. He asserts that the District "recklessly and without regard for the rights of others, breached [its] duty to properly train, supervise, investigate and correct the improper actions of its employee Police Officers." Am. Compl. ¶ 110. But this alternative theory founders on the absence of any factual allegations to support it.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights" may amount to deliberate indifference. *Connick*, 131 S. Ct. at 1359; *see also City of Canton*, 489 U.S. at 388 ("We hold today that the inadequacy of police training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). Courts have found that inadequate training amounts to deliberate indifference "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and the municipality fails to remedy that omission. *Connick*, 131 S. Ct. at 1360. To demonstrate that a municipality is on active or constructive notice, a plaintiff "ordinarily" must show a "pattern of similar constitutional violations by untrained employees." *Id.* (citing *Bd. of Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Here, Plaintiff has not alleged any facts that, if proven, would establish that the District was aware, or should have been aware, that its training was inadequate. He has not identified any aspect of the District's officer training program that allegedly was omitted or deficient. Nor has he put forward facts showing a "pattern" of excessive force by MPD officers, which might give rise to an inference that the District was on notice of unconstitutional conduct and did nothing to correct it. All he has alleged is that his constitutional rights were violated during a single incident.

As the Supreme Court has said, "permitting cases against cities for their 'failure to train' employees to go forward under [Section] 1983" without facts connecting the training deficiency to the plaintiff's injury, "would result in *de facto respondeat superior* liability on municipalities—a result we rejected in *Monell*." *City of Canton*, 489 U.S. at 392 (citing *Monell*, 463 U.S. at 693-94).[5] The court cannot allow Plaintiff's unadorned *Monell* claim to proceed here. It therefore grants the District's Motion to Dismiss as to Plaintiff's Section 1983 claim.

### B.      Civil Conspiracy Claim Against the District

Plaintiff alleges civil conspiracy against Defendant Officers directly and the District under a theory of *respondeat superior*. He asserts that Defendant Officers, "by their actions and through common design on July 6, 2013, unlawfully conspired to falsely arrest and detain[ ] the Plaintiff without probable cause to do so" and "conspired to file false reports and offer false testimony against the Plaintiff in order to cover up their use of excessive force and battery of" him. Am. Compl. ¶¶ 73, 75, 105-07. The District moves to dismiss this claim on two grounds. First, it argues that D.C. law does not recognize civil conspiracy as a stand-alone tort and that "Plaintiff has raised his conspiracy claim as an independent tort, not a means for establishing vicarious liability for another underlying tort." Def. District's Partial Mot. to Dismiss Pl.'s Am. Compl, ECF No. 12 at 8-9 [hereinafter District's Mot.]. Second, it argues that Defendant Officers cannot be held liable for conspiring with each other because, under the intracorporate conspiracy doctrine, "it is well-established that governmental entities, including the District of Columbia, its agencies, and its officers, cannot form a conspiracy because the government, the agency, and/or the employees constitute a *single* entity and no one may conspire with him/herself." *Id.* The court is not persuaded by either argument.

---

[5] Plaintiff relies on *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), for the proposition that conclusory allegations of "a failure to train and an unusually serious instance of misconduct" are sufficient at the motion to dismiss stage, *id.* at 422. *Atchinson* pre-dated *Twombly* and *Iqbal*, however, and this court must evaluate Plaintiff's complaint under those subsequent Supreme Court decisions, which have declared such conclusory pleading insufficient. *See Robertson v. District of Columbia*, No. 09-CV-00188, 2010 WL 3238996, at *7 (D.D.C. Aug. 16, 2010).

*1.*        *Plaintiff Has Sufficiently Pled an Underlying Tort*

To prove a civil conspiracy under D.C. law, a plaintiff must show "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (citations omitted). The District is correct that "[c]ivil conspiracy is not an independent tort." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007) (citations omitted) (internal quotation marks omitted). Rather, it is "a device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to it, where the requisite agreement exists among them." *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989) (citations omitted). "A claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) (citing *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000)).

Here, by answering some of Plaintiff's alleged tort claims, the District has conceded that Plaintiff has sufficiently alleged an underlying tort on which to rest his claim of conspiracy. The District answered Plaintiff's claims for assault, battery, intentional infliction of emotional distress, and, most notably, false imprisonment and false arrest. *See generally* District's Answer. Plaintiff's conspiracy claim alleges that Defendant Officers "unlawfully conspired to *falsely arrest and detain*[ ] the Plaintiff without probable cause to do so" and "without probable cause to believe that the Plaintiff was involved in any wrong-doing." Am. Compl. ¶¶ 73-74 (emphasis added). Having answered, and thus conceded the proper pleading of, Plaintiff's stand-alone claim for false imprisonment and false arrest, the District cannot now assert that Plaintiff's claim of civil conspiracy lacks a requisite underlying tort.

## 2. The Intracorporate Conspiracy Doctrine Does Not Apply

The court now turns to the District's argument that Defendant Officers could not have conspired with one another, as a matter of law, under the intracorporate conspiracy doctrine. "'The intracorporate conspiracy doctrine holds that . . . a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Exec. Sandwich Shoppe*, 749 A.2d at 739 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). The District maintains that, here, where "Plaintiff only implicates District employees as the alleged conspirators" and "the District and its employees make up one entity, it cannot conspire with itself." District's Mot. at 9-10. Plaintiff does not dispute that the intracorporate conspiracy doctrine may apply to District employees; nor does he dispute that all of the alleged conspirators were employed by the District. *See* Pl.'s Opp'n at 8-9. Instead, he argues that the intracorporate conspiracy doctrine is inapplicable in this case because it "does not protect police officers when conspiring to cover up their own misconduct." *Id.*

The D.C. Court of Appeals has discussed the intracorporate conspiracy doctrine on only one occasion, and it did so in a cursory manner. In *Executive Sandwich Shoppe*, the court reversed a lower court's dismissal of a civil conspiracy claim. 749 A.2d 724. At the close of its opinion, the D.C. Court of Appeals directed the trial court to "consider" on remand "the applicability of the intracorporate conspiracy doctrine to the . . . civil conspiracy claim" and quoted the Eleventh Circuit's decision in *McAndrew v. Lockheed Martin Corp.* in defining the doctrine. *Id.* at 739. The D.C. Court of Appeals ended its discussion of the intracorporate conspiracy doctrine there, and to this court's knowledge, has not revisited it again. The court's instruction to the trial court to "consider," without further explanation, the doctrine's "applicability," leaves uncertain its status under D.C. common law. *See Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 104 (D.D.C.

2011) ("The District of Columbia Court of Appeals does not appear to have addressed whether or to what extent it recognizes the doctrine in regard to alleged violations of D.C. statutory or common law.").[6]

But even if applicable, the intracorporate conspiracy doctrine would not help the District here. The sole case relied upon by the D.C. Court of Appeals, *McAndrew v. Lockheed Martin Corp.*, considered at length an exception to the doctrine for "criminal conspiracies." 206 F.3d at 1035-41. *McAndrew* involved a federal law claim under Section 1985(2) "alleging a conspiracy to deter a person by force, intimidation, or threat from testifying in a federal court proceeding." *Id.* at 1035. "The only issue before [the court was] whether the intracorporate conspiracy doctrine applie[d] to and bar[red] a claim arising under Title 42 U.S.C. § 1985(2)," given the "long-established conclusion that the intracorporate conspiracy doctrine does *not* apply to criminal conspiracies." *Id.* (emphasis added) (footnote omitted).[7] The court found that the plaintiff's civil law claim "necessarily alleges criminal activity in violation of 18 U.S.C. § 1512—the criminal statute prohibiting tampering with a witness—and a criminal conspiracy in violation 18 U.S.C. § 371." *Id.* at 1039. And because it could "discern no basis for drawing [a] distinction," *id.* at 1040, between a conspiracy under criminal law and a conspiracy alleging criminal activity under civil law, the court concluded that "the intracorporate conspiracy doctrine does not apply and . . . cannot shield the [d]efendants from civil liability," *id.* at 1036.

---

[6] Our Court of Appeals has applied the intracorporate conspiracy doctrine to a claim of "civil conspiracy to act negligently." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992). *Okusami* was an antitrust case in which the plaintiff alleged that the defendants conspired to violate the Sherman Act. *Id.* at 1063-64. Because the intracorporate conspiracy doctrine was originally developed in the antitrust context, *see Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), its application to the civil conspiracy claim alleged in *Okusami* was logical. This court does not, however, interpret *Okusami* to establish a broader principle that the intracorporate conspiracy doctrine is applicable to *any* alleged conspiracy to commit a tort under D.C. common law.
[7] The Supreme Court has acknowledged that the intracorporate conspiracy doctrine does not apply to criminal conspiracies, noting that "it has long been the law of criminal conspiracy that the officers of even a single corporation are capable of conspiring with each other or the corporation." *See Copperweld Corp.*, 467 U.S. at 786 (Stevens, J., dissenting) (citations omitted).

Here, like the claim of the plaintiff in *McAndrew*, Plaintiff's civil conspiracy claim "necessarily alleges criminal activity." *Id.* at 1039. Under D.C. law, it is a crime to "make or cause to be made to [MPD], a false or fictitious report of the commission of any criminal offense within the District of Columbia . . . knowing such report to be false or fictitious." D.C. Code § 5-117.05. It is also a crime to "wilfully make[ ] a false statement that is in fact material, in writing, directly or indirectly, to any instrumentality of the District of Columbia government, under circumstances in which the statement could reasonably be expected to be relied upon as true." D.C. Code § 22-2405(a). Further, D.C. law criminalizes "conspir[ing] . . . to commit a criminal offense." D.C. Code § 22-1805a; *see also Gilliam v. U.S.*, 80 A.3d 192, 208 ("Under D.C. law, a conspiracy requires proof of both agreement and action: an agreement to commit a criminal offense and, during the life of the conspiracy, and in furtherance of its objective, the commission by at least one conspirator of at least one of the overt acts specified in the indictment.") (citations omitted) (internal quotation marks omitted). Plaintiff's claim alleging a conspiracy to file false police reports and give false testimony, like the conspiracy in *McAndrew*, "squarely and unambiguously alleges a criminal conspiracy." *McAndrew*, 206 F.3d at 1035-36. Thus, even if the intracorporate conspiracy doctrine can serve as a shield to a civil conspiracy claim, that doctrine does not protect the District here, where its employees are alleged to have conspired to commit criminal conduct.

This conclusion is consistent with cases applying the intracorporate conspiracy doctrine to conspiracy claims arising under the federal civil rights laws. Courts in this district, for instance, have examined the doctrine extensively in relation to Section 1983 and 1985 conspiracies, and concluded that it does not apply when the underlying alleged scheme involves conduct that is outside the scope of employment and at least arguably criminal. *See, e.g.*, *Kenley v. District of*

*Columbia*, No. 14-CV-01232, 2015 WL 1138274, at \*5 (D.D.C. Mar. 13, 2015) (holding the doctrine "inapplicable in cases alleging egregious police misconduct that cannot be fairly characterized as involving routine business decisions") (citations omitted); *Rawlings*, 820 F. Supp. 2d at 104 ("Where courts have recognized the doctrine, they have included an important caveat that is implicated here: for the doctrine to apply, the individual defendants must have been acting within the scope of their shared employment.").

One such case, *Kivanc v. Ramsey*, is particularly illustrative because, like this case, it involved an allegation that MPD officers had conspired "to conceal assault and battery with false police reports." 407 F. Supp. 2d 270, 275 (D.D.C. 2006), *abrogated on other grounds by Harvey v. Kasco*, No. 14-CV-01571, 2015 WL 3777362 (D.D.C. June 17, 2015). The court refused to apply the intracorporate conspiracy doctrine to dismiss the civil rights conspiracy claim because it was "not persuaded [that the defendants' alleged actions] could conceivably be classified as the products of routine police department decision-making." 407 F. Supp. 2d at 276. Similarly, here, the alleged conduct of Defendant Officers of falsifying police reports to conceal their assaultive behavior, Compl. ¶ 75, if accepted as true, cannot properly be characterized as a "routine business decision" or conduct within the "scope of employment." The intracorporate conspiracy doctrine is therefore not applicable. The court denies the District's Motion to Dismiss as to Plaintiff's civil conspiracy claim.

### C.    Negligence Claim Against the District

Plaintiff also has alleged a negligence claim against Defendant Officers directly and against the District under a theory of *respondeat superior*. Am. Compl. ¶¶ 78-87, 105-107. He asserts that "Defendant Officers were negligent and breached their duty of care by, among other things, failing to comply with all applicable laws, statutes, regulations, training, police standards, police

special orders and general orders with regard to the treatment and actions of Plaintiff while he was in their custody." *Id.* ¶ 79. He also contends that "Defendant Officers had a duty to intervene and prevent the attacking Officers from using inappropriate force vis-à-vis the Plaintiff." *Id.* ¶ 85. To establish these duties, Plaintiff points to three MPD "General Orders," one MPD "Special Order," and MPD's "Spectrum of Force" and "Use of Force Continuum" policies, which collectively address the appropriate use of force, along with ethical and reporting obligations. *Id.* ¶¶ 80-84. He alleges that Defendant Officers' breach of these duties was "the direct and proximate cause of [his] significant and several injuries." *Id.* ¶ 86. The District moves to dismiss, arguing that "Plaintiff has pled no separate facts to support a stand-alone negligent cause of action that is distinct from his excessive force, assault, and false arrest claims." District's Mot. at 11. The court agrees with the District.

There is some divergence in this jurisdiction as to whether a plaintiff can simultaneously sustain claims for assault/battery *and* negligence, both premised on an excessive use of force. Some courts in this district have allowed such pleading to proceed based on the general rule that a plaintiff may plead inconsistent theories in the alternative, *See, e.g.*, *Harvey*, 2015 WL 3777362, at *3; *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 19-20 (D.D.C. 2014). Others, however, have dismissed the negligence claim, concluding that the two claims cannot co-exist because "a person cannot negligently commit an intentional tort." *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000); *see also Rawlings*, 820 F. Supp. 2d at 109; *Rice v. District of Columbia*, 715 F. Supp. 2d 127, 132 (D.D.C. 2010); *Austin v. District of Columbia*, No. 05-CV-02219, 2007 WL 1404444, at *5-6 (D.D.C. May 11, 2007).

The D.C. Court of Appeals, however, has provided clear guidance. In *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003), the court acknowledged the general rule that an "individual

who has been injured by a District police officer may sue under one or more common law theories of legal liability such as assault and battery or negligence." *Id.* at 705 (citation omitted). But to sustain such alternative claims, the court held, the negligence claim cannot simply rest on the same allegations as does the assault/battery claim. "[I]n a case involving the intentional use of force by police officers, a negligence count . . . must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." *Id.* at 711. In *Chinn*, the court held that the plaintiff had not established an aspect of negligence separate from the alleged assaultive behavior and thus both claims could not proceed together:

> The crux of Chinn's claim is that the officers deliberately inflicted excessive force upon him, and the evidence presented at trial was that officers continuously assaulted him without provocation. Chinn did not argue that the officers mistakenly or negligently thought Chinn was armed; Chinn did not allege that the officers misperceived him as a threat. The negligence claim, under these circumstances, should not have gone to the jury as no separate and distinct cause or theory of negligence was presented before the court.

*Id.*

Although *Chinn* arose in the specific context of whether the trial court should have submitted the alternative claims to a jury, *Chinn*'s requirement that a plaintiff must distinctly present an aspect of negligence apart from the use of excessive force is pertinent here. To establish the relevant standard of care and to sustain his negligence claim, Plaintiff's pleading relies on nothing more than MPD's regulations and policies prohibiting the use of excessive force. These regulations and policies provide that officers "shall use only that force which is reasonably necessary to bring an incident under . . . control, while protecting the lives of the officers and others," Am. Compl. ¶ 80; "use only the minimal amount of force which is consistent with the accomplishment of their mission, and to only use force to protect life and property, to make a

lawful arrest, to prevent escape of a law violator, to control an unlawful situation, and/or to re[s]train a resisting suspect or prisoner," *id.* ¶ 82; and, "not . . . strike or use any form of physical force on a person with whom they are dealing, except when necessary to prevent an escape, when acting in self-defense, or to prevent violence to another person, *id.* ¶ 84. Although regulations and policies such as those cited by Plaintiff "may constitute *evidence* of a specific standard o[f] care," they do not themselves establish a distinct standard of care. *Austin*, 2007 WL 1404444, at *6 (citation omitted) (emphasis added); *see also Rice*, 715 F. Supp. 2d at 132 (citations omitted) (finding that an MPD General Order regarding the use of firearms "functions as an internal operating manual and not as a regulation whose violation constitutes negligence *per se*"). And they certainly do not establish a standard of care different from the general standard to refrain from using excessive force.[8] Thus, because Plaintiff's negligence claim is premised on the same exact excessive-use-of-force allegations that serve as the basis for his claims for assault and battery, he has not pled a separate, legally cognizable claim.[9]

Plaintiff's negligence claim is not saved by his alternative assertion that Defendant Officers were negligent with regard to their duty to intervene. The District is correct that a police officer only has a duty to intervene where "the police and the individual are in a special relationship different from that existing between the police and citizens generally." *Warren v. District of Columbia*, 444 A.2d 1, 5 (D.C. 1981); *see also Martin v. Malhoyt*, 830 F.2d 237, 259 (D.C. Cir.

---

[8] In addition to regulations and policies regarding the use of excessive force, Plaintiff cites regulations addressing ethics—"Pursuant to Special Order 97-31, Code of Ethics, Defendant Officers had a duty to not conduct themselves in any way which may be construed as immoral, indecent, and/or unprofessional," Am. Compl. ¶ 81—and reporting— "Pursuant to General Order 201.26, Defendants had a duty to report any violations of the rules of the MPD by any other member of the MDP to their immediate supervisor," *id.* ¶ 83. Similar to the regulations and policies related to the use of force, these regulations do not, on their own, establish duties of care. *See Austin*, 2007 WL 1404444, at *6. Therefore, they too are insufficient to support Plaintiff's negligence claim.

[9] If, during discovery, Plaintiff were to uncover facts that would give rise to "an aspect of negligence apart from the use of excessive force," *Chinn*, 839 A.2d at 711, the court would consider an amendment of Plaintiff's Amended Complaint that reasserts his negligence claim.

1987). A special relationship is formed when there is "(1) a specific undertaking to protect a particular individual, and (2) justifiable reliance by the [individual]." *Morgan v. District of Columbia*, 468 A.2d 1306, 1314 (D.C. 1983) (en banc). In this case, Plaintiff has pled no facts to support an inference that Defendant Officers specifically undertook to protect him or that he relied on Defendant Officers to do so. He simply stated that, "under the guidelines and orders set forth" in his Amended Complaint—none of which state or imply a duty to intervene or reference a special relationship between Plaintiff and Defendant Officers—"Defendant Officers had a duty to intervene and prevent the attacking Officers from using inappropriate force." Am. Compl. ¶ 85. Even when viewed in the light most favorable to Plaintiff, this statement is insufficient to support his allegation of negligence. The court therefore grants the District's Motion to Dismiss as to Plaintiff's negligence claim against the District.

### D. Malicious Prosecution Against the District

Plaintiff has alleged malicious prosecution against Defendant Officers directly and against the District under a theory of *respondeat superior*. *Id.* ¶¶ 99-107. To support a malicious prosecution claim under D.C. law, "there must be (a) a criminal proceeding instituted or continued by the defendant against the plaintiff, (b) termination of the proceeding in favor of the accused, (c) absence of probable cause for the proceeding, and (d) 'malice,' or a primary purpose in instituting the proceeding other than that of bringing an offender to justice." *DeWitt v. District of Columbia*, 43 A.3d 291, 296 (D.C. 2012) (citation omitted). Courts also generally require that a "special injury [was] occasioned by plaintiff as a result of the original action." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). Defendant moves to dismiss this claim as insufficiently pled, arguing first, that "Plaintiff has pled no facts to indicate that the underlying suit terminated in his

favor," and second, that "Plaintiff has failed to plead any 'special injury' that he suffered as a result of the underlying action." District's Mot. at 12. The court disagrees.

### 1. Plaintiff Has Sufficiently Pled that the Underlying Case Terminated in His Favor

Under D.C. law, a plaintiff need not show that he was found innocent after a trial in order to demonstrate that a case terminated in his favor. *See Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986). All that is required is termination of the kind that "tends to indicate the innocence of the accused." *Id.* (citations omitted). In *Brown*, on which the District relies in its Motion, the D.C. Court of Appeals stated:

> [N]o favorable termination is found where the earlier action is dismissed on the ground of the statute of limitations or laches because these dispositions do not reflect on the merits of the underlying claim. By contrast, dismissal for failure to prosecute has been held to be a favorable termination where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit.

*Id.* (internal citations omitted); *see also Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 331 (D.D.C. 2012) (citations omitted) ("Courts have consistently dismissed malicious prosecution claims when the prior suit was dismissed for lack of jurisdiction or standing, as opposed to on the merits of the plaintiff's claims. By contrast, District of Columbia courts have found that abandonment of an action, or voluntary dismissal for lack of prosecution, can constitute a termination in plaintiff's favor for the purposes of malicious prosecution.").

Here, Plaintiff states that the "charge of Assault on [a] Police Officer was dismissed in the Superior Court for the District of Columbia." Am. Compl. ¶ 102. Although this terse assertion does not explain why his case was dismissed, the court can, at this stage, plausibly infer from the dismissal—along with the allegations surrounding Plaintiff's false arrest—that Plaintiff's

prosecution terminated for reasons that "tend to indicate" his innocence. Moreover, the District, in its Motion and its Reply Brief, failed to offer any facts regarding the circumstances of the underlying case's dismissal. Where a defendant offers no such evidence, courts have allowed malicious prosecution claims to survive motions to dismiss. *See, e.g.*, *Lucas v. District of Columbia*, 505 F. Supp. 2d 122, 127 (D.D.C 2007) ("Defendants provide no 'facts of the case' arising from the criminal charges filed against the Plaintiff from which the Court could find that the disposition did not reflect on the innocence of the Defendant. The Court will deny this aspect of Defendants' motion without prejudice."); *Feld*, 873 F. Supp. 2d at 322 (quoting *Lucas*, 505 F. Supp. 2d at 127) ("At this stage of the litigation, these defendants have provided no 'facts of the case' arising from their decision to abandon their claims 'from which the Court could find that the disposition did not reflect on the innocence' of FEI. Accordingly, the Court will deny the motion to dismiss the malicious prosecution claims[.]"). The court thus finds that Plaintiff has sufficiently pled that the underlying case terminated in his favor.

### 2. Plaintiff Has Sufficiently Pled a Special Injury

Defendant also argues that Plaintiff failed to allege a "special injury." "Special injury" for purposes of a malicious prosecution claim is defined as "arrest, seizure of property, or injury which would not necessarily result from suits to recover for like causes of action." *Lucas*, 505 F. Supp. 2d at 127 (citation omitted) (internal quotation marks omitted) (quoting *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1282 (D.C. 2002). In his Amended Complaint, Plaintiff averred that, "[a]s a result of the intentional and wrongful actions of the Defendant Officers, [he] suffered a loss of liberty, emotional distress, psychological harm and mental anguish, loss of reputation, and economic injury." *Am. Compl.* ¶ 104. Plaintiff's allegation that he suffered "a loss of liberty"—

another way of stating "arrest"—sufficiently alleges a "special injury." The court therefore denies the District's Motion to Dismiss as to Plaintiff's malicious prosecution claim.

### E. Negligent Training and Supervision Against the District

Plaintiff also has made a "negligent training and supervision" claim against the District. He contends that the District "was under a duty to properly train, supervise, investigate and correct improper actions of the MPD Officers," Am. Compl. ¶ 109; that it "recklessly and without regard for the rights of others, breached [its] duty," *id.* ¶ 110; and that the breach was the "direct and proximate cause of the substantial injuries sustained by" Plaintiff, *id.* ¶ 111. The District moves to dismiss this claim, arguing that "Plaintiff has simply alleged no facts explaining how the District knew or should have known its officers needed additional training or that this purported lack of training and supervision would have proximately caused his injuries, or how the District was negligent in training or supervising the officers that allegedly assaulted him." District's Mot. at 13. The court agrees with the District.

To prevail on a claim of negligent training and supervision under D.C. law, a plaintiff must "show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010) (citations omitted). Here, Plaintiff has not alleged any facts to support the inference that the District had knowledge of MPD officers' tendency to use excessive force. *See Harvey*, 2015 WL 3777362, at *4 (granting motion to dismiss negligent training and supervision claim where Plaintiff offered no facts "regarding the District of Columbia's knowledge that one of its officers would allegedly use excessive force in effectuating an unjustified arrest in a single incident, or that other officers would fail to intercede"). Plaintiff also has failed to present facts

regarding the District's supervision, or lack thereof, of its employees. *See Rawlings*, 820 F. Supp. 2d at 116. The court therefore grants the District's Motion to Dismiss as to Plaintiff's claim of negligent training and supervision.

### F. All Claims Against the Named Officers

The Named Officers move to dismiss the Amended Complaint in its entirety on one ground—they claim that they were not properly served with process. The relevant facts are these. Plaintiff filed his initial Complaint on July 3, 2014. ECF No. 1. He filed an Amended Complaint on October 23, 2014, Am. Compl., before he had served the Named Officers—Thomas O'Donnell, Kevin Lally, Jason Romlein, and Bryan Adelmeyer—with his initial Complaint. *See* Mem. of P. & A. in Supp. of Defs. O'Donnell, Lally, Romlein, and Adelmeyer's Mot. to Dismiss, ECF No. 11 ¶ 2 [hereinafter Named Officers' Mot.]. Six days later, on October 29, 2014, Plaintiff served Defendant Romlein with the initial Complaint; thereafter, he served the other three Named Officers with the same. *See* Named Officers Mot. ¶¶ 3-4.

The Named Officers argue that "Plaintiff has failed to demonstrate that the[y] were served with the Amended Complaint" and "[t]herefore, dismissal is appropriate" under Federal Rule of Civil Procedure 4(b). Named Officers' Mot. ¶ 6. Plaintiff does not dispute his failure to serve the Named Officers with the Amended Complaint, explaining that his "counsel was unsure that the Court had accepted the Amended Complaint until the Court filed its minute order on November 19, 2014 denying as moot the Defendant District of Columbia's Motion to Dismiss [his initial Complaint]," by which time the Named "Officers had been served." Mem. of P. & A. in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. 16 ¶¶ 5-6. Plaintiff has asked "that the Court permit [him] additional [time] to serve the [Named O]fficers with the Amended Complaint." *Id.* ¶ 8.

Under the Federal Rules, a "plaintiff is responsible for having the summons and complaint served," Fed R. Civ. P. 4(c)(1), "within 120 days after the complaint is filed," *id.* at 4(m). Service has two purposes: (1) it "is a means of notifying a defendant of the commencement of an action against him" and (2) it "marks the court's assertion of jurisdiction over the lawsuit." *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (citation omitted) (internal quotation marks omitted). Here, Plaintiff *did* serve the Named Officers with the initial Complaint within 120 days after it was filed with this court. That service accomplished the purpose of notifying them of Plaintiff's action. It also accomplished the purpose of establishing the court's jurisdiction over the lawsuit, which neither the Named Officers nor the District argues is improper. *See generally* Named Officers' Mot.; District's Mot. Having accomplished these two purposes by serving the Named Officers with his initial complaint, Plaintiff's failure to serve the Amended Complaint is not fatal. The Named Officers' Motion to Dismiss is therefore denied.

The court nevertheless, out of an abundance of caution, will exercise its discretion under Federal Rule of Civil Procedure 4(m) to grant Plaintiff an additional 21 days to complete service of the Amended Complaint and file proof of such service with the court. *See* Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."); *see also Mann*, 681 F.3d at 375 (quoting Fed. R. Civ. P. 4(m), Advisory Committee note to 1993 Amendments, Subdivision(m)) ("The Advisory Committee note for Rule 4(m) instructs that the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'").

V. **CONCLUSION AND ORDER**

For the reasons stated above, the court grants the District's Motion to Dismiss as to Plaintiff's 42 U.S.C. § 1983, negligence, and negligent training and supervision claims, and denies

the Motion as to Plaintiff's civil conspiracy and malicious prosecution claims.  Additionally, the

Named Officers' Motion to Dismiss is denied.


Dated:  August 3, 2015                                          Amit P. Mehta
                                                                United States District Judge